**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BRIAN STROUSE,**

**Plaintiff,**

**vs.** **Case No.: 8:12-CV-1698-T-17EAJ**

**CAROLYN W. COLVIN**
**Commissioner of Social**
**Security Administration,**[1]

**Defendant.**
______________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be affirmed and this case dismissed.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The undersigned has replaced Michael J. Astrue, former Commissioner of Social Security, with the current acting Commissioner of Social Security, Carolyn W. Colvin.

[2] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## Background

On July 16, 2009, Plaintiff filed an application for DIB alleging disability beginning December 7, 2008. (T 12, 19, 80) Plaintiff's application was denied initially and upon reconsideration, and a hearing was held on January 14, 2011. (T 25, 59) Fifty-years-old at the time of the hearing, Plaintiff has a high school level education and past work experience as a delivery driver, chief survey worker, television cable installer, and sign maker and installer. (T 18, 106-111)

On March 15, 2011, the ALJ denied Plaintiff's application. (T 9) The ALJ determined that Plaintiff's severe impairments included degenerative disc disease ("DDD") of the cervical and lumbar spine, but this impairment did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T 14-15) Plaintiff was determined to have a residual functional capacity ("RFC") to perform light work except that he could sit for six hours in an eight

hour workday; could occasionally climb ladders, ropes and scaffolds; had no manipulative, visual, or communicative limitations; and must avoid concentrated exposure to vibration, hazardous machinery, and unprotected heights. (T 16)

Based on vocational expert ("VE") testimony, the ALJ found that Plaintiff could perform his past relevant work as a delivery driver and could perform work as an inspector, assembler, and clerk. (T 18-20, 45-46) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 20) On June 21, 2012, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

**Analysis**

Plaintiff submits that the ALJ erred in evaluating the medical opinion evidence and Plaintiff's subjective complaints of pain and other symptoms. Because these issues implicate the record, a review of the record is necessary.

Plaintiff received medical care and treatment at Gulf Coast Medical from November 2007 to July 2009. (T 229-264) On November 30, 2007, Douglas Jordan, D.P.M. ("Dr. Jordan") diagnosed Plaintiff with left plantar fasciitis. (T 234) A renal ultrasound exam for hematuria on May 5, 2008 returned normal results. (T 205, 233) On May 3, 2008, Plaintiff complained of back pain for the past two weeks. (T 231) Ritchie Plummer, D.O. ("Dr. Plummer") observed on May 8, 2008 that Plaintiff's complaints of chronic lumbar pain were getting worse, he had decreased lumbar range of motion ("ROM") with palpable tenderness at the S-I joints, he was anemic with a hemoglobin of 12.8, and he may need pain management. (T 230) On June 10, 2008, Plaintiff's abdominal CT scan for hematuria was unremarkable. (T 248) Dr. Plummer noted on October 4,

2008 chronic lumbar pain with decreased ROM and palpable tenderness in the lumbosacral area. (T 229) Dr. Plummer diagnosed lumbar neuralgia, bilateral inguinal hernias (asymptomatic), hematuria, foot degenerative joint disease, and hyperlipidemia. (T 229)

An October 8, 2008 lumbar spine MRI revealed: (1) a disc bulge and small paracentral right protrusion at L3-4 with impingement of the right L4 nerve root and canal stenosis; (2) a disc bulge and paracentral left extrusion at L4-5 with impingement of the left L5 nerve root with canal stenosis; (3) a disc bulge at L5-S1 with neural foraminal stenosis without impingement, but evidence of underlying annular tear or fissure; and (4) degenerative changes of the lumbar spine. (T 185)

During a neurosurgical evaluation on November 1, 2008, George D. Giannakopoulos, M.D. ("Dr. Giannakopoulos") noted Plaintiff's current work as a surveyor, his chronic low back pain, and his present pain level of six or seven on a scale of zero to ten. (T 189) Dr. Giannakopoulos found normal strength in the upper and lower extremities, intact sensory responses, and moderate paraspinal mid-lumbar muscle spasms with point tenderness. (T 190) He diagnosed Plaintiff with chronic low back pain secondary to herniated nucleus pulposus and recommended conservative treatment due to the absence of radicular symptoms, weight loss, physical therapy, pain medications, and, for a limited time, to wear a back brace while working. (Id.)

On December 6, 2008, Plaintiff complained to Adam Grunbaum, D.O. ("Dr. Grunbaum") of numbness and tingling down his right arm after washing the floor. (T 228) Dr. Grunbaum prescribed Naproxyn and Vicodin for pain. (Id.) A cervical spine MRI on December 10, 2008 revealed: (1) a central disc protrusions at C5-6 and C6-7 with canal stenosis and flattening and displacement of the cervical cord; and (2) a mild central disc bulges at C3-4 and C4-5 without significant stenosis or impingement. (T 183)

In a follow-up visit with Dr. Giannakopoulos on May 29, 2009, Plaintiff stated that his right

upper extremity pain with numbness and tingling had progressively worsened over the past six months and also had mild weakness in the right upper extremity. (T 188) Dr. Giannakopoulos noted that the December 10, 2008 cervical spine MRI revealed DDD at C5-6 and C6-7, with a herniated nucleus pulposus at C6-7 and nerve root impingement at C5-6 and C6-7. (T 182-83, 188) On June 4, 2009, Plaintiff reported no improvement in his right upper extremity pain and neck pain from a Medrol Dosepack. (T 187) Dr. Giannakopoulos observed +4/5 weakness in the right upper extremity tricep and bicep muscles and recommended physical therapy, one more steroid pack, and to consider surgery. (Id.)

On June 11, 2009, Michael Strobbe, D.O. ("Dr. Strobbe") diagnosed cervical and lumbar neuralgia. (T 225) Physical therapy treatment notes from June 24, 2009 through July 14, 2009 show that Plaintiff complained of neck pain and bilateral shoulder pain. (T 208-218) On July 16, 2009, Dr. Strobbe indicated that Plaintiff had no improvement after physical therapy. (T 209) In the discharge summary, the physical therapist indicated lack of progress as the reason for discharge. (T 209)

On August 27, 2009, Plaintiff underwent a consultative physical examination with Dr. Adam Greenfield, D.O. ("Dr. Greenfield") for seventeen minutes. (T 261-266) Dr. Greenfield noted Plaintiff's complaints of chronic neck and back pain and Vicoden and Neurontin pain medications, but reported full cervical and lumbar ROM, reduced right upper extremity strength, and deep tendon reflexes of +2/4 in upper and lower extremities. (T 261-63) Plaintiff had no pain in his upper or lower extremities. (T 263)

On September 21, 2009, non-examining single decisionmaker ("SDM") Maureen M. Jeannette ("Jeanette") opined that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, could stand and/or walk for six hours in an eight-hour workday, and could sit for six

hours in an eight-hour workday. (T 268) Jeannette found no push/pull limitations in Plaintiff's upper or lower extremities and that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, and scaffolds. (T 268-69)

Non-examining physician Minal Krishnamurthy, M.D. ("Dr. Krishnamurthy") concluded on October 29, 2009 that Plaintiff could frequently lift ten pounds and occasionally lift twenty pounds, could stand and/or walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday. (T 305) Dr. Krishnamurthy found no push and pull limitations in Plaintiff's upper or lower extremities and limited Plaintiff to occasionally climbing ladders, ropes and scaffolds, but found no other postural limitations. (T 305-06)

On December 16, 2009, Plaintiff saw William Crumbley, M.D. ("Dr. Crumbley") for neck pain, low back pain, progressively worse right arm pain, right leg numbness and tingling, and an intermittent burning sensation in his right arm. (T 393) Plaintiff stated that Hyrdrocodone "just does not work." (Id.) Dr. Crumbley noted that Plaintiff had tenderness to the paralumbar area with trigger points and assessed neck pain, low back pain, and lumbar radiculopathy. (Id.) Dr. Crumbley prescribed claimant Oxycodone, 15 mg, and Xanaflex, 4 mg. (Id.) On December 29, 2009, Plaintiff reported his pain at four or five out of ten and right thumb numbness. (T 391-92) Plaintiff complained on February 23, 2010 of five out of ten pain, severe muscle spasms, and shooting pain in his right hip. (T 388) His pain was a seven out of ten on March 23, 2010. (T 386) An April 14, 2010 thoracic spine MRI revealed a disc bulge impingement on the thecal sac at T8-9, ligamentum flavum hypertrophy at T2-3 impinging on the thecal sac, and subcentimeter hemangiomas at T5 and T7 vertebral bodies. (T 411) On May 18, 2010, Dr. Crumbley noted cervicalgia and lumbago, disc bulges, and right-sided sciatica pain down Plaintiff's right hip. (T 382) On November 2, 2010, Plaintiff reported seventy-five percent pain relief with medications. (T 370)

On January 7, 2011, Dr. Crumbley opined that Plaintiff could stand, walk, and sit for less than three hours, could occasionally lift less than ten pounds, could never lift any amount frequently, could never push and pull with the right hand, and could perform right hand fine manipulation with difficulty. (T 364) Dr. Crumbley concluded that Plaintiff required two to three unscheduled breaks of thirty to forty-five minutes during an eight-hour workday, could never bend, kneel, squat, crawl or climb ladders, but could climb stairs occasionally, and must avoid unprotected heights, moving machinery, marked changes in temperature and humidity, dust, fumes, gases, and driving automotive equipment. (T 365)

## I. Medical Opinion Evidence

Plaintiff argues that the ALJ failed to articulate good cause for discrediting treating physician Dr. Crumbley's opinion and failed to discuss Dr. Crumbley's treatment records. Plaintiff contends that the ALJ erred in relying on consultative examiner Dr. Greenfield's seventeen minute and allegedly inaccurate examination and non-examiner Dr. Krishnamurthy's assessment over the opinion of Dr. Crumbley. As Dr. Greenfield's August 27, 2009 examination was prior to Dr. Crumbley's treatment in December 2009, Plaintiff asserts that the ALJ should have deferred to Dr. Crumbley's January 2011 opinion formed after a year of providing consistent medical care to Plaintiff.

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citation omitted). "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the

evidence supports a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). Rejection of a treating physician's opinion must be supported by clearly articulated reasons. Id. at 1241.

The opinion of a one-time examiner does not require the same type of deference as an opinion of a treating physician. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citation omitted). However, it is not improper for an ALJ to consider the reports of consulting physicians, as long as the opinion of the treating physician is accorded proper weight. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam).

Noting that non-examiner Dr. Krishnamurthy was a licensed physician, the ALJ afforded great weight to Dr. Krishnamurthy's opinion that Plaintiff could perform light work. (T 17) The ALJ considered that SDM Jeannette found that Plaintiff could perform light work. (Id.) The ALJ gave little weight to Dr. Crumbley's opinion that Plaintiff suffered extreme limitations precluding Plaintiff from performing sedentary work because it was contrary to the weight of the evidence. (T 18)

The ALJ provided good cause for giving little weight to Dr. Crumbley's opinion as it was contrary to the weight of the evidence, and the ALJ adequately discussed the evidence contrary to Dr. Crumbley's opinion. (T 14-18) The ALJ stated that although the MRIs confirmed the presence of disc bulges and protrusions at multiple levels in Plaintiff's cervical and lumbar spine, examinations revealed that the limiting effects of Plaintiff's conditions were less restrictive than alleged. (T 17) Consultative examiner Dr. Greenfield found that Plaintiff had a full range of motion in the cervical and lumbar spine, a negative straight leg raise, and no motor or sensory deficits. (T 17, 262, 263) Plaintiff had intact deep tendon reflexes and full strength throughout with the

exception of slightly decreased strength in the right arm (T 17, 262, 263) Plaintiff could squat, could walk with a normal gait, had no muscle spasms, and had no manipulation difficulties. (Id.) Additionally, Plaintiff received only conservative treatment, such as pain medication, and had no surgery or other aggressive treatment. (T 18, 33) Plaintiff's application for unemployment suggested that he was willing and able to work as contrasted with his application for disability. (T 17, 31-32) Plaintiff cared for his personal needs, occasionally helped with household chores, drove, and went out to eat on occasion. (T 17-18, 34-35) The weight of the evidence conflicts with Dr. Crumbley's opinion imposing severe restrictions on Plaintiff's ability to work.

Plaintiff relies on three opinions in which the court found that the ALJ failed to properly articulate reasons for discrediting a treating physician's opinion, but these opinions are distinguishable as the ALJ in those cases failed to identify evidence that was inconsistent with the treating physician's opinion. See Paltan v. Comm'r of Soc. Sec., No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008); Poplardo v. Astrue, No. 3:06-cv-1101-J-MCR., 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008); Hibbard v. Comm'r of Soc. Sec., No. 6:06-cv-1749-Orl-DAB, 2007 WL 4365647, at *4-6 (M.D. Fla. Dec. 12, 2007). Here, the ALJ discussed the evidence undermining Dr. Crumbley's opinion, including Dr. Greenfield's examination and Plaintiff's conservative treatment history. As the ALJ properly identified the evidence inconsistent with Dr. Crumbley's opinion, a meaningful review of the ALJ's decision is possible. Substantial evidence supports the ALJ's decision to assign little weight to Dr. Crumbley's opinion.

The ALJ did not reversibly err in failing to discuss Dr. Crumbley's treatment notes as they do not undermine the ALJ's decision that Plaintiff can perform light work as a survey worker, merchandise marker, and mail room work clerk. Dr. Crumbley's treatment notes indicate Plaintiff's

decreased range of motion in his cervical and lumbar spine, his subjective complaints, his lumbago and cervicalgia diagnoses, and that his medications provided seventy-five percent pain relief or effectively reduced his pain. (T 366-409) Findings of a reduced range of motion do not undermine the ALJ's decision, as performing the jobs of survey worker, merchandise marker, and mail room work clerk do not require any stooping, kneeling, crouching, or crawling. See U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT") §§ 205.367-054, 209.587-034, 209.687-026 (4th ed., rev. 1991). Any failure of the ALJ to discuss Dr. Crumbley's treatment notes was harmless error.

As the ALJ provided good cause for discrediting Dr. Crumbley's opinion, the ALJ did not err in relying on the opinions of non-examiner Dr. Krishnamurthy and consultative examiner Dr. Greenfield. See Jones, 810 F.2d at 1005. Nor did the ALJ reversibly err by not specifying the weight given to Dr. Greenfield's findings as they do not conflict with the ALJ's decision. See Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (unpublished) (finding no reversible error for failure to specify the weight given to a physician's opinion that was consistent with the ALJ's findings).[3] Although Plaintiff alleges that Dr. Greenfield performed the examination prior to Plaintiff's treatment with Dr. Crumbley, Dr. Greenfield's findings are inaccurate, and Dr. Greenfield's examination lasted only seventeen minutes, the ALJ's reliance on Dr. Greenfield's examination does not constitute error. As substantial evidence supports the ALJ's findings, the Court cannot reweigh the evidence to reach a contrary conclusion. See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam).

Accordingly, remand on these issues is unwarranted.

## II. Plaintiff's Credibility

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

Plaintiff contends that the ALJ erred in relying on Plaintiff's receipt of unemployment compensation and daily living activities to discredit Plaintiff's complaints of pain and other symptoms and that the ALJ misstated Plaintiff's testimony regarding his daily living activities.

The Eleventh Circuit has established a three-part "pain standard" to use when a claimant attempts to establish disability through testimony of pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).

Where an ALJ declines to credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote, 67 F.3d at 1561-62. A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted). A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case Id. (citation omitted).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, an ALJ may properly rely on a claimant's daily activities, among other evidence, in assessing a claimant's credibility. Marcia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987) (per curiam).

Plaintiff testified that he has constant neck and back pain radiating into his shoulder, arm, and hip. (T 16) As stretching and lying down relieve his pain, he must lie down three times a day for two hours at a time. (Id.) Plaintiff alleged that he is unable to sit, stand for more than thirty-five

minutes, walk more than two city blocks, and lift more than ten pounds. (Id.) While Plaintiff testified that he does not do housework or yard work, he cooks a little bit and does laundry sometimes. (T 34-35) In a disability report he stated that he does "very light cleaning a little at a time." (T 34-35, 135) Plaintiff reported that he is able to drive when he has to, which is about twice a week if he has to go to the doctor; he goes out to eat once in a while if he is having a good day and shops once every two weeks. (T 35)

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not credible to the extent they are inconsistent with the RFC. (T 17) The ALJ cited to evidence that conflicted with Plaintiff's statements, including Dr. Greenfield's consultative examination, Dr. Krishnamurthy's assessment, Plaintiff's receipt of unemployment benefits, Plaintiff's conservative treatment for his pain, and Plaintiff's ability to perform daily living activities. (T 17-18) The ALJ stated that Plaintiff "testified that he is able to care for his personal needs, that he occasionally helps with household chores . . . that he is able to drive . . . [and] that he goes out to eat on occasion." (T 17-18)

The ALJ did not err in stating that Plaintiff occasionally helps with household chores, drives, and goes out to eat on occasion. While Plaintiff testified that he does not do housework, he also stated that he does laundry sometimes and stated in a disability report that he does very light cleaning a little at a time. (T 34-35, 135) Plaintiff stated that he is able to drive when he has to, which is about twice a week if he has to go to the doctor, and that he does out to eat once in a while if he is having a good day. (T 35) The ALJ did not misstate Plaintiff's testimony and properly relied on Plaintiff's daily activities, among other evidence, in assessing Plaintiff's credibility. See Marcia, 829 F.2d at 1012.

Plaintiff argues that the receipt of unemployment compensation is not a valid reason to

discredit a claimant's credibility. See O'Neal v. Astrue, No. 3:08-cv-63-J-MCR, 2009 WL 702865, at *11 (M.D. Fla. Mar. 17, 2009). However, the Court agrees with the holding in another case from this district, that, although the receipt of unemployment benefits alone does not disqualify a claimant from consideration for Social Security benefits, an ALJ may consider a claimant's receipt of unemployment compensation as one factor in evaluating a claimant's credibility. See Kalishek v. Astrue, No. 8:10–cv–714–T–23AEP, 2011 WL 4389643, at *5 (M.D. Fla. Aug. 23, 2011) (citations omitted); see also Estelle v. Astrue, No. 2:11–cv–337–FtM–99SPC, 2012 WL 4369296, at *20 (M.D. Fla. July 31, 2012); Boyd v. Astrue, No. 3:10–cv–105–J–JRK, 2011 WL 1259795, at *6-7 (M.D. Fla. Mar. 31, 2011); 20 C.F.R. § 404.1529(c)(3)(vii) (2011) (providing that the ALJ may consider "[o]ther factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms"). Here, the ALJ did not err in relying on the inconsistency between receiving unemployment compensation and applying for disability benefits as one factor in evaluating Plaintiff's credibility.

As substantial evidence supports the ALJ's credibility determination, Plaintiff's argument is without merit. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2) The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 30th day of May, 2013.

ELIZABETH A JENKINS
United States Magistrate Judge